**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RONALD L. KYLES**                                    **CIVIL ACTION**

**VERSUS**                                             **NO.  13-668**

**N. BURL CAIN, WARDEN**                               **SECTION "I"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 2g8 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ronald L. Kyles, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 16, 2006, Kyles was charged with simple burglary of an inhabited dwelling in a bill of information in Washington Parish.  The bill of information was later amended to charge Kyles with simple burglary.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On February 9, 2006, at approximately 11:30 a.m., Hope Elizabeth Powe noticed a white Chrysler automobile parked on the grass behind a home belonging to her neighbor, Alcide Layford, at 1119 Monroe Street in Washington Parish. Powe was aware that Layford had moved out of the home after her son was found dead there and that the home had been unoccupied for over a year.  Powe saw the defendant exit the home, place a box into the car, and then reenter the home.  She walked up to the car and saw a Skil saw and other items in the box.  She then ran across the street and called the police. Thereafter, she saw the defendant exit Layford's home with a "really big" television set.  Powe shouted to the defendant, "Hey, what [are] you doing?" He replied, "A white guy in there sold me the television."  Powe told the defendant that a white guy did not live at the house. The defendant got into the Chrysler and began backing out of the driveway.  He then stopped in front of Powe's house, and she asked him what he was doing. He answered he had "just got the television from the guy[.]" Powe told the defendant to "[h]old up a minute," so she could talk to him, but he drove off. She noticed a temporary license plate on the back of the Chrysler, a "Mack Grub sticker" on the front of the vehicle, and a neon green keychain hanging from the rearview mirror.
>
> Bogalusa Police Department Captain John Sumrall and another officer responded to Powe's report of a burglary and, upon their arrival, Powe informed them about her conversation with the defendant, including his claim that "a white guy" inside of the house had sold him the television set.  Captain Sumrall and the other responding officer found the back door of 1119 Monroe Street kicked open and the house in "total disarray," but did not find anyone else in the house.
>
> After the police left the scene, Powe realized she had seen the Chrysler before, and drove around her neighborhood looking for the car. She located the car in an alley.  She looked into the car and saw the neon green keychain hanging

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, p. 33a.

from the rearview mirror. She also saw a blue hat and a gray shirt that the defendant had been wearing when she spoke to him. Powe also realized the car belonged to the defendant's wife, Michele Holmes, who she knew from the neighborhood. She alerted the police to the location of the car.

Captain Sumrall then returned to the area after Powe reported she had located the getaway vehicle. The vehicle was parked at 1012 Lincoln Street. There was no license plate on the rear of the vehicle, but there was a "Mack Grub Chevrolet" advertising plate on the front of the vehicle. Bogalusa Police Department Sergeant Tate advised Captain Sumrall that the defendant lived at the residence. Additionally, the vehicle's identification number identified Michele Holmes as its owner and indicated her address was 1012 Lincoln. Street. Holmes answered the door of 1012 Lincoln Street and, at the request of the police, asked the defendant to come to the door. The police advised the defendant of his Miranda[4] rights and told him he was a suspect in the burglary of 1119 Monroe Street. The defendant stated he had a saw and power converter from the house, and Captain Sumrall seized those items. The defendant claimed "Danny" had the television from the house. The defendant did not provide Danny's surname, height, weight, or clothing description, but indicated he lived "[s]omewhere off of Austin Street." The defendant gave no other information as to the identity of the purported seller of the merchandise. Captain Sumrall asked several detectives and other people in the area if they knew of a white male named Danny; none of them knew of anyone of that description.

The police contacted Layford and asked her to see if any items were missing from her house at 1119 Monroe Street. Layford discovered numerous items were missing from the home, including: a circular Skil saw; a current converter box; a computer monitor; an air compressor; carpenter tools; a free-standing light; and a "big" television set. She identified the circular saw and converter box seized from the defendant as items taken from her home and indicated she did not give the defendant permission to enter her home or to take any items from it on the day of the offense.

State v. Kyles, 57 So. 3d 612 (Table), 2011 WL 2135644, at *1-2 (La. App. 1st Cir. 2/11/11); State Record Volume 4 of 4, Louisiana First Circuit Court of Appeal Opinion, 2010-KA-1308, February 11, 2011.

---

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

On August 30, 2007, the trial court conducted a hearing and denied Kyles's motions to suppress evidence, his identification and confession.[5]  On that same date, Kyles's jury trial commenced in the Twenty-Second Judicial District Court for Washington Parish.  On August 31, 2007, the trial ended in a mistrial.[6]  A retrial commenced on June 16, 2008.[7]  On June 17, 2008, Kyles was found guilty as charged.[8] The state trial court sentenced Kyles on July 21, 2008, to ten (10) years in prison with credit for time served.[9]  On that same date, the State filed a multiple offender bill of information against Kyles.[10] On August 6, 2009, after several continuances, the state trial court found Kyles to be a fourth felony offender.  The court vacated Kyles's original sentence and resentenced him to life in prison without benefit of parole, probation or suspension of sentence.[11]  On August 20, 2008, Kyles filed a pro se motion to reconsider

---

[5]St. Rec. Vol. 1 of 4, p. 12.

[6]Id. at pp. 18-19.

[7]Id. at p. 23.

[8]Id. at p. 26.

[9]Id. at p. 27.

[10]Id.

[11]St. Rec. Vol. 1 of 4, p. 32.

the sentence, which the trial court denied on September 15, 2008.[12]  Defense counsel

filed a second motion to reconsider sentence, which was denied on December 18, 2009.[13]

On direct appeal, Kyles's counsel asserted three arguments:  (1) The evidence was

insufficient to support the conviction.  (2) The trial court erred in denying the motion to

reconsider Kyles's sentence.  (3) The sentence was unconstitutionally excessive.[14]  On

November 2, 2010, Kyles filed a pro se supplemental appeal brief asserting the following

claims:  (1) The ten (10) year "cleansing period" had elapsed since the expiration of the

sentence of a previous conviction and the commission of a predicate  offense.  (2) The

trial court erred in denying his motion to quash the multiple offender bill.[15]  On February

11, 2011, the Louisiana First Circuit affirmed Kyles's conviction, habitual offender

adjudication and sentence.[16]  On September 16, 2011, the Louisiana Supreme Court

denied Kyles's writ application without opinion.[17]

Kyles's conviction became final 90 days later, on December 15, 2011, when he

did not seek a writ of certiorari in the United States Supreme Court.  Roberts v. Cockrell,

---

[12]Id. at pp. 80-83.

[13]Id. at pp. 193b-195.

[14]St. Rec. Vol. 4 of 4, Appeal Brief, 2010-KA-1308, 8/13/10.

[15]Id., Supplemental Appeal Brief, 2010-KA-1308, 11/2/10.

[16]State v. Kyles, 57 So.3d 612 (Table), No. 2010-KA-1308, 2011 WL 2135644 (La. App. 1st Cir. 2/11/11); St. Rec. Vol. 4 of 4.

[17]State v. Kyles, 69 So.3d 1142, No. 2011-KO-0429 (La. 2011); St. Rec. Vol. 4 of 4.

319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); <u>Flanagan v. Johnson</u>, 154 F.3d 196, 200-01 (5th Cir. 1998)); <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

Instead, on December 6, 2011, Kyles had filed an application for post-conviction relief in the state trial court, asserting the following claims:  (1) His counsel failed to conduct a pre-trial investigation.  (2) His counsel failed to investigate the documentation of a prior guilty plea used for habitual offender purposes. (3) The trial court erred in allowing three predicate offenses to be used to enhance his sentence.[18]  On April 4, 2012, Kyles filed a supplemental application for post-conviction relief, complaining that his life sentence was unconstitutionally excessive.[19]  On April 30, 2012, the trial court denied Kyles's application for post-conviction relief on the merits.[20]  On July 27, 2012, the Louisiana First Circuit denied Kyles's related writ application.[21]  On February 8, 2013, the Louisiana Supreme Court  denied Kyles's writ application without opinion.[22]

---

[18]St. Rec. Vol. 3 of 4.

[19]<u>Id</u>.

[20]<u>Id</u>.

[21]<u>State v. Kyles</u>, No. 2012-KW-1004 (La. App. 1st Cir. 7/27/12); St. Rec. Vol. 4 of 4.

[22]<u>State ex rel. Kyles v. State</u>, 108 So.3d 79, No. 2012-KH-1965 (La. 2013); St. Rec. Vol. 4 of 4.

II.    FEDERAL HABEAS PETITION

On April 12, 2013, the clerk of this court filed Kyles's petition for federal habeas corpus relief in which Kyles asserts the following arguments:[23]  (1) The evidence was insufficient to support his conviction.  (2) The trial court erred in denying his motion to reconsider sentence on grounds that the sentence was unconstitutionally excessive. (3) His counsel was ineffective in failing to (a) conduct a pre-trial investigation and (b) investigate the documentation of a prior guilty plea used in his habitual offender proceeding.  (4) The trial court erred in using three predicate offenses to enhance his sentence.  (5) The state courts failed to address his ineffective assistance of counsel claim in post-conviction proceedings. The State filed a response in opposition to Kyles's petition, conceding that the petition was timely filed, but arguing that Kyles has failed fully to exhaust his state court remedies.[24]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and

---

[23]Rec. Doc. No. 1.

[24]Rec. Doc. No. 14.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

7

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Kyles's petition which, for reasons discussed below, is deemed filed in this federal court on April 8, 2013.[26]

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes – and I find – that Kyles's petition is timely filed.  The State argues, however, that Kyles's petition is a mixed petition, presenting some claims which were not exhausted in the state courts.  As discussed below, because I find that the unexhausted claims are without merit, I will address them at this time without requiring full exhaustion.  28 U.S.C. § 2254(b)(2).

---

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Kyles dated his signature on the petition on April 8, 2013. Rec. Doc. No. 1, p. 6. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).   The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)),  aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); accord Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (citing Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.      SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)

Kyles alleges that the evidence at trial was insufficient to prove that he was guilty of simple burglary. Kyles claims that the evidence supported his story that he innocently bought the merchandise from a "white guy." In support of his argument, Kyles relies on

10

a report prepared by Captain John Sumerall. Reading from his report at trial, Sumerall

testified in pertinent part:

> "She [Hope Powe] stated that she had seen two males enter the residence and remove a television and an electrical saw, placing them in a white Chrysler. She further stated that the black male had left, driving north in the 1200 block of Monroe Street. She thought that the other male was still in the residence. Officers checked the residence, finding no one there."[27]
>
> ****
>
> "Captain Sumerall spoke with Ms. Powe, who stated that she had seen a black male and a white male enter the residence."[28]

In addressing the instant argument on direct appeal, the Louisiana First Circuit

noted that Kyles's insufficient evidence claim was based upon the above-quoted

statements contained in Sumerall's written report. The appellate court further noted,

however, that "both Powe and Sumerall testified that she [Powe] did not say that she had

seen a second perpetrator. Rather, she told the officers that the defendant told her that

he had bought the items from a white male in the house."[29]

A review of the trial transcript establishes the accuracy of the state appellate

court's summation of the pertinent trial testimony. At trial, Hope Powe testified:

> Well, when I called the police, he [the defendant] came out with a big, really big television. And so when he was putting it in, I walked - - I was still outside, you know, and I asked him, I said, "Hey, what you doing?" He says , "A white guy in there sold me the television."

---

[27]St. Rec. Vol. 1 of 4, p. 148.

[28]St. Rec. Vol. 1 of 4, p. 149.

[29]Kyles, 2011 WL 2135644, at *2.

11

Q.  <u>Did you see a white guy</u>?
A.  <u>No</u>.[30]

Similarly, Captain Sumerall testified that Ms. Powe stated that <u>the suspect told her</u> that he bought the merchandise from a white guy, not that she saw a white guy.[31]

Under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  <u>Id</u>., 443 U.S. at 319; <u>Williams v. Cain</u>, 408 Fed. Appx. 817, 821 (5th Cir. 2011); <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U. S. at 324 n. 16).  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  <u>See</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 Fed. App'x 89, 91 (5th Cir. 2009) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial") (quoting <u>Jackson</u>, 443 U.S. at 324).

---

[30]St. Rec. Vol. 1 of 4, pp. 114-15.

[31]<u>Id</u>. at p. 134.

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury.  <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.  <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Kyles was convicted of simple burglary.  Simple burglary is defined in pertinent part in La. Rev. Stat. § 14:62 as "the unauthorized entering of any dwelling . . . or other structure with the intent to commit a felony or any theft therein . . . ."  "Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused."  State v. Austin, 113 So.3d 306, 312 (La. App. 5th Cir. 2013) (citation omitted).  Specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. §14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Sharlhorne, 54 So.2d 1317, 1321 (La. App. 1st Cir. 1989).[32]

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.  Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of witnesses, the

---

[32]At trial, the jury was instructed as to the definition of simple burglary and the components of the crime, i.e., specific and general intent, felony and theft. St. Rec. Vol. 1 of 4, pp. 181-82. Thereafter, the court summarized:

> Thus, in order to convict the defendant, you must find, first, that the defendant intentionally entered the structure located at 1119 Monroe Street, Bogalusa, Washington Parish, Louisiana, belonging to Alcide Fritz on February 9, 2006; second, that the defendant was not authorized to enter the structure; and third, that the defendant entered therein with the specific intent to commit a felony or any theft therein.

St. Rec. Vol. 1 of 4, pp. 182-83.

matter is one of the weight of the evidence, not its sufficiency.  The trier of fact's determination of the weight of evidence is not subject to appellate review.  An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 721 So.2d 929, 932 (La. App. 1st Cir. 1998).

In support of his insufficient evidence claim, Kyles relies on the written report of Captain Sumerall taken at the crime scene which represents that Hope Powe informed him that there were two men on the scene. This evidence was contradicted by the live testimony of both Powe and Sumerall at trial.  Both witnesses testified that Kyles told Powe there was another man, a "white guy," on the scene, establishing that the officer's written report was simply mistaken.  Powe never saw anyone but Kyles.[33]

As the Louisiana First Circuit observed, the verdict rendered against Kyles reflects that the jury accepted the sworn testimony of the witnesses offered against him, Kyles, 2011 WL 2135644, at *3, clearly indicating that it considered the written report to have been mistaken.  A jury is free to accept or reject evidence as it sees fit, and it is not for this court on habeas review to second-guess a jury's factual findings or to substitute its judgment of the weight of the evidence for that of the jury.  See United States v. Larry, 199 Fed. Appx. 321, 323 (5th Cir. 2006) (jury's decision to accept or reject testimony is a credibility determination not to be disturbed by this court); United States v. Garza, 187 Fed. Appx. 397, 399 (5th Cir. 2006) (same).

---

[33]See supra at p. 12.

When viewed in the light most favorable to the prosecution, as required by Jackson, the evidence at trial was more than sufficient to establish all the elements of the simple burglary charge against Kyles.  The state courts' rejection of Kyles's claim that there was insufficient evidence to support his conviction was not contrary to Supreme Court precedent.  Kyles is not entitled to federal habeas corpus relief on this ground.

## VI.   EXCESSIVE SENTENCE (CLAIM NO. 2)

Kyles argues that the life sentence he ultimately received was unconstitutionally excessive and, therefore, his motion to reconsider his sentence should have been granted by the state courts.  Kyles claims that his prior convictions were relatively minor and did not warrant a life sentence, even under Louisiana's habitual offender statutory scheme.

In addressing this issue on direct appeal, the Louisiana First Circuit examined, in pertinent part, the multiple offender statute, La. Rev. Stat. § 15:529.1, as it read at the time Kyles committed the simple burglary and was convicted and sentenced.

A(1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

...(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or

16

> (ii) If the fourth felony and two of the prior felonies are . . . punishable by imprisonment for <u>twelve years or more</u> . . . the person <u>shall be</u> imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.  [Emphasis added.]

<u>Kyles</u>, 2011 WL 2135644, at *4-5.  Thereafter, the state appellate court reviewed Kyles's prior convictions, including "# 5 and # 6 [which] both involved burglaries of sheds." <u>Id</u>. at *5.

The simple burglary statute, La. Rev. Stat. § 14:62, provides for a fine not to exceed two thousand dollars ($2,000) and for a sentence of not more than <u>twelve</u> (12) <u>years</u> or both.  Thus, with three simple burglary convictions, Kyles was subject to a mandatory life sentence under La. Rev. Stat. § 15:529.1A(1)(c)(ii).

For purposes of federal habeas review under the AEDPA standard, an excessive sentence claim presents a question of law.  <u>Chatman v. Miller</u>, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); <u>Davis v. Cain</u>, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); <u>Jones v. Kaylo</u>, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Kyles may therefore obtain federal habeas relief as to this claim only if he establishes that the state courts' decision was contrary to or an unreasonable application of clearly established Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  <u>Haynes v. Butler</u>, 825 F. 2d 921, 923-24 (5th Cir. 1987); <u>see</u> <u>Turner v. Cain</u>, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (because sentence was within Louisiana statutory limits and within trial court's

discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F. 2d at 923-24).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence, unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); United States  v. Forbes, 282 F. App'x 324, 325 (5th Cir. 2008).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, 131 S.Ct. 2466 (2011); Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996); McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Because Kyles's sentence was within statutory guidelines, this court must consider proportionality when compared with sentences imposed in similar cases.  The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  Ewing v. California, 528 U.S. 11, 23 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will

18

reach the level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

Kyles stresses that all of his prior crimes were "non-violent."  Thus, he contends that a life sentence was unduly harsh.  However, Kyles's life sentence was imposed not because his prior simple burglary convictions were violent, but rather because they carried sentences of twelve (12) years and he was established to be a habitual recidivist thief.  It is not a rarity in Louisiana for fourth felony offenders with no past violent criminal convictions to receive the mandatory life sentence imposed under La. Rev. Stat. § 15:529.1A(1)(c)(ii).   See State v. Bell, 972 So.2d 1207, 1212-13 (La. App. 2nd Cir. 2007) (mandatory life sentence not excessive where defendant was adjudicated a fourth felony offender based on three prior non-violent crimes, i.e., attempted simple burglary, simple burglary and simple burglary of an inhabited dwelling); State v. Lowery, 890 So.2d 711, 724 (La. App. 1st Cir. 2004) (citations omitted), writ denied, 902 So.2d 1018 (La. 2005) ("a record of non-violent offenses cannot be the only reason or even the major reason for declaring a life sentence under the habitual offender law to be excessive"); State v. Jerome, 845 So.2d 1194, 1198-99 (La. App. 4th Cir. 2003) (same);  State v. Simmons, 839 So.2d 239, 244-45 (La. App. 5th Cir. 2003), writ denied, 857 So.2d 473 (La. 2003) (no showing of exceptional circumstances justifying downward departure from mandatory life sentence even though habitual offender defendant had no violent predicate offenses).

Applying the factors and legal standards discussed above, I find that Kyles's life sentence was not unconstitutionally excessive. The life sentence he received as a proven habitual burglar was both within statutory limits and consistent with sentences imposed for similar career criminals in Louisiana. The state courts' evaluation of this issue fully comported with applicable Supreme Court precedent. Kyles is not entitled to federal habeas corpus relief on this claim.

VII.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3)

Kyles argues that his counsel was ineffective for failing to conduct an adequate pre-trial investigation. He states that his counsel should have "motioned the Court for fingerprints, footprints, and fibers to be taken from the scene and tested," and that if such measures had been taken, "the identity of the white male could have been discovered; thereby supporting and proving Mr. Kyles had bought the items and did not commit this offense."[34]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

---

[34]Rec. Doc. No. 1, p. 22.

20

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Thus, scrutiny of counsel's performance under § 2254(d) is "'doubly deferential.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Kyles claims that his counsel should have insisted on having "fingerprints, footprints, and fibers" taken from the scene. Kyles argues that this evidence would have proven that a white male had been in the house, thereby proving his story that he purchased the items rather than stole them.

Hope Powe testified that she saw Kyles exit the house with goods and she confronted him. Kyles told her that he had purchased the items from a white male inside the house. After Kyles drove away, Powe stayed outside the house until police arrived on the scene. She informed the police that she had not seen any white male, but she had

not been inside the house.  Thereafter, two police officers searched the house and found no one inside it.[35]

It was uncontested[36] that there was no one in the house from whom Kyles could have purchased the items which he took from the house.  Powe testified that no white male exited the house, and Captain Sumrall testified that no white male was inside the house.  There was no non-speculative basis for counsel to have sought to have "fingerprints, footprints, and fibers" taken from the house.  A motion for such discovery would have been wholly speculative and risky.  Counsel cannot be ineffective for failing to pursue a futile course of action.  United States v. Manley, 2011 WL 2259761, *3 (E.D. Pa. 2011); see Lindsey v. Cain, 267 Fed. Appx. 374, *1 (5th Cir. 2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002)).

Kyles also argues that his counsel was ineffective for failing to investigate the documentation of Kyles's prior guilty pleas, which were used as the basis for the state court's finding that he was a habitual felony offender.  Kyles asserts:

> Although the State proved "the existence of the prior guilty plea[s] and Mr. Kyles was represented by counsel," Mr. Kyles should have been able to offer affirmative evidence showing that Mr. Kyles had never been adjudicated as a third felony offender.  If defense counsel would have reviewed the documentation of the prior pleas, he could have objected to Mr. Kyles being adjudicated a fourth felony offender on the grounds that

---

[35]St. Rec. Vol. 1 of 4, pp. 114-115; 118-119.

[36]Kyles did not testify at trial.

he had not been adjudicated as a third felony offender as required by LSA-R.S. 15:529.1.  If defense counsel would have introduced the properly certified documentation which shows Mr. Kyles was never adjudicated as a third felony offender, there is a reasonable probability the trial court would not have found Mr. Kyles a fourth offender and sentenced him to life imprisonment.[37]

La. Rev. Stat. § 15:529.1(B) provides in pertinent part:

[A]n offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third felony offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.

Thus, Kyles was not prejudiced by counsel's alleged deficiency in failing to recognize that Kyles had not previously been adjudicated as a third felony offender, since the applicable state statute clearly establishes the futility and irrelevancy of any such argument.  Regardless of that fact, Kyles was subject to fourth offender adjudication and the corresponding mandatory life sentence.  Kyles has not satisfied his two-prong Strickland burden of proof.  The state courts' rejection of the instant claim did not represent an unreasonable application of United States Supreme Court precedent to the facts of this case.

---

[37]Rec. Doc. No. 1, p. 24.

## VIII.   VALIDITY OF PRIOR GUILTY PLEAS USED TO ENHANCE PRESENT SENTENCE (CLAIM NO. 4)

Kyles had two prior convictions for simple burglary, Case Nos. 94-6093 and 95-2943, and one prior conviction for theft, Case No. 98-0309.[38]  These three convictions, resulting from pleas of guilty, were used as predicate offenses to adjudicate Kyles as a fourth felony offender in the instant state case.  Kyles complains that these prior convictions should not have been used to enhance his present sentence because "the charge[s] to which he was pleading guilty" were not explained to him.[39]

28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief <u>only</u> from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"  <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies as to the convictions he challenges.  <u>Dickerson v. Louisiana</u>, 816 F.2d 220, 224 (5th Cir. 1987).  The United States Supreme Court has interpreted this statutory language to require that the habeas petitioner be in custody at the time the petition is filed for the conviction or sentence under attack. <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394, 400–401 (2001).

---

[38]St. Rec. Vol. 3 of 4, pp. 390-91.

[39]Rec. Doc. No. 1, p. 25.

As the United States Supreme Court held in <u>Lackawanna</u>, when a habeas petitioner is no longer serving the sentences imposed pursuant to his old convictions, he cannot bring a federal habeas action directed solely at challenging those convictions. However, where his current Section 2254 petition can be (and has been) construed as asserting a challenge to the sentence he is currently serving, as enhanced by the allegedly invalid old convictions, he satisfies the "in custody" requirement for jurisdictional purposes. <u>Lackawanna</u>, 534 U.S. at 401–02.

In <u>Lackawanna</u>, however, the Supreme Court also held that, although jurisdiction to consider such a claim exists, relief is generally <u>un</u>available to a state prisoner through a petition for writ of habeas corpus, when the prisoner challenges a current sentence on the ground that it was enhanced based on allegedly unconstitutional prior convictions for which the petitioner is no longer in custody. "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as <u>conclusively valid</u> . . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may <u>not</u> challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." <u>Id</u>. at 403–04 (citation omitted) (emphasis added).

In <u>Lackawanna</u>, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel. No such claim is made in this case, and I am unaware of any exception to the rule that would apply to the claim asserted by Kyles.[40]

For the foregoing reasons, this court will not revisit Kyles's prior convictions, Case Nos. 94-6093, 95-2943 and 98-0309, which are "regarded as conclusively valid," <u>Lackawanna</u>, 534 U.S. at 403, and which have been upheld in subsequent litigation. Federal habeas relief is unavailable as to Kyles's challenge of the use of old and conclusively valid convictions to enhance the sentence he is currently serving. Kyles is not entitled to relief on this claim.

Kyles also complains that before imposing the mandatory life sentence, the state trial court "should have reviewed the prior predicate offenses to ensure that they [met] the core concern that Mr. Kyles had received real notice of the true nature of the charge[s] against him . . . ."[41]

---

[40]As explained by the Sixth Circuit in <u>Abdus–Samad v. Bell</u>, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the <u>Lackawanna</u> Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence. These circumstances do not exist in Kyles's case.

[41]Rec. Doc. No. 1, p. 26.

Kyles had two prior convictions for simple burglary, Case Nos. 94-6093 and 95-2943, and one prior conviction for theft, Case No. 98-0309.[42]  The guilty plea transcripts were admitted into evidence for all three convictions.[43]  Defense counsel read extensively from each transcript.  All three transcripts made reference to the fact that the respective trial courts explained the nature of the crimes to which Kyles was then pleading guilty.[44]  After listening to <u>extensive</u> arguments[45] and reviewing the transcripts in chambers,[46] the court denied Kyles's request that his prior convictions be stricken from the multiple bill.[47]

I find that Kyles was afforded ample and legally correct review of his motion that his prior guilty pleas not be considered for purposes of adjudicating him a fourth felony offender.  Kyles is not entitled to federal habeas relief on this claim.

IX.   FAILURE TO ADDRESS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ON POST-CONVICTION REVIEW (CLAIM NO. 5)

Kyles argues that his constitutional rights were violated because his "ineffective assistance of counsel [claim] should have been addressed during the course of the

---

[42]<u>See</u> <u>supra</u> at p. 26.

[43]St. Rec. Vol. 3 of 4, pp. 389-91.

[44]St. Rec. Vol. 3 of 4, pp. 395, 399 and 403.

[45]St. Rec. Vol 3 of 4, pp. 393-422

[46]<u>Id</u>. at 422.

[47]<u>Id</u>. at pp. 422-24.

collateral review . . . ."[48]  Kyles relies on the Supreme Court decision in Martinez v. Ryan, 132 S.Ct. 1309 (2012), to support his argument.

In Martinez, the Supreme Court held that "'a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  Trevino v. Thaler, 133 S.Ct. 1911, 1912 (2013) (quoting Martinez, 132 S.Ct. at 1320) (emphasis added).

In this case, Kyles's ineffective assistance of trial counsel claim was not procedurally barred by the state courts.  His ineffectiveness claim was in fact addressed and rejected on the merits.[49]  Consequently, Kyles's ineffective assistance of trial counsel claim was not barred from federal habeas review, and his reliance on Martinez is misplaced and inapplicable as a matter of law.[50]  Kyles is not entitled to habeas relief on this claim.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Ronald L. Kyles for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[48]Rec. Doc. No. 1, p. 27.

[49]See supra at pp. 6-7.

[50]See supra at pp. 20-26.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[51]

New Orleans, Louisiana, this _____15th_____ day of October, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[51]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.